# Baldi v. Metropolitan Life Insurance Company, Appellant.

*Insurance—Life insurance—Proofs of death—Evidence—Estoppel.*

Preliminary proofs of death required by a life insurance company are, when furnished, only evidence that the insured has complied with 'the requisitions of the policy, and are inadmissible as evidence for the plaintiff to prove the issue on the trial; and although the statements in them will be taken against the insured as statements against interest, he may show that the statements themselves are without foundation, and were inadvertently made. Such inadvertent mistakes are without effect to estop insured from showing the truth.

Where a claimant's affidavit to the proofs of death is to the best of his knowledge and belief, he is not precluded at the trial of an action upon the policy, from testifying that his answer to the question as to prior illness of the insured, and as to the attendance therefor of a physician were based exclusively on information coming from what he had a right to suppose was a reliable source.

Where the required preliminary proofs of death contain a statement by a physician that he had attended the insured prior to the date of the policy for a disease of which the insured died, the claimant may contradict the statement of the physician by proof of the latter's subsequent unsworn declarations and admissions inconsistent therewith.

Where an application states that the applicant never had disease of the heart, and it appears that the insured died of angina pectoris, and in the

proofs of death there is a statement by a physician that he had attended the insured prior to the date of the policy for angina pectoris, the claimant may produce evidence to contradict the statement of the physician made in the proofs of death, but the insurance company is entitled to have the jury plainly instructed that the statements of the insured contained in the application relative to his having had a disease of the heart, and to the attendance of a physician for prior illness, are material to the risk, and that if either is found to be false or untrue, this will avoid the policy.

Where a physician has made a statement as part of proofs of death; a supplemental statement of the same physician furnished in compliance with the insurance company's demand for a more complete statement, is a part of the proofs of death.

Argued Oct. 15, 1903.    Appeal, No. 1, Oct. T., 1903, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1897, No. 2, on verdict for plaintiff in case of Charles C. A. Baldi, Administrator of Francis Rizzo, Deceased, v. Metropolitan Life Insurance Company.    Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit upon a policy of life insurance.    Before BAR-RATT, J.

The facts are stated in the opinion of the Superior Court.

The plaintiff examined Dominico Biello as follows :

" Q.  Are you the Mr. Biello that Mr. Baldi spoke about as being present at the conversation in January, 1900 ?    A.  Yes, sir.    Q.  Tell the court and jury what was said at that conversation.    A.  When I came here I met Dr. Leone out here at the court, and he asked me, ' What are you here for Mr. Biello ? '    I said, ' I am here to testify when Dr. Rizzo was sick, and that his nephew called on me to go for some doctor, and I came to your house and a woman called out of the window and said, " The doctor is sick," and then I went to the doctor again, and he sent me to Dr. Deakyne.'    Q.  You went to Dr. Deakyne ?    A.  Yes, sir; I was there, and Dr. Deakyne was not in that night, but I left Dr. Rizzo's card, and the next morning he came.    Q.  What did Dr. Leone say when you told him you were going to say that ?    A.  He said, ' Why are you going to say that, Mr. Biello ?   Now, I gave there a certificate, and that was my mistake ; but I guess I can fix that.    That will be true.    That will be all right.'    Q.  What else was said at that time ?    A.  That is all.    Q.  Did he say anything about

his reputation as a doctor? A. No; we did not talk about that at all. Q. Who was present at that time? A. Mr. Brunetti and Mr. Baldi. I don't remember exactly, but I guess Professor Rondinella was there, too. Q. What do you recollect, if anything further, that was said? A. He said, 'It is better if you don't say anything about that, because I wrote such a certificate; but I guess I am mistaken, but you will ruin my professional position. That is not right for me to show. Now, I must stand for that, but I guess that will be all right.'" [3]

The plaintiff examined Vincenzo Brunetti as follows:

" Q. Are you the Mr. Brunetti who was present at the conversation in January, 1900, that took place in the corridor? A. Yes, sir; I was with Dr. Leone, because Dr. Leone stopped at my house and I used to be with him all the time every day here in court. Q. Where did Dr. Leone live in January, 1900? A. Out of this city. He used to live in New Haven, Conn. Q. When he came on in this case he stopped at your house? A. He stopped at my house first in January, one afternoon, and had supper with me—had dinner with me and breakfast with me, but said he did not want to sleep with me. Q. What took place at this interview? A. I came with Dr. Leone, Mr. Baldi, and Mr. Biello. As soon as he saw Mr. Biello he asked him, 'What are you here for?' He said, 'I am here to testify you never attended Dr. Rizzo the first six weeks of 1894 or 1893, at that time.' Dr. Leone said, 'Mr. Biello, if you say this you are going to ruin me, because I am not very scholared in English and I wrote that certificate. I know myself I made a mistake and I am going to try to fix it all right.'" [4]

" Q. Subsequently you did see Dr. Leone? A. Yes, sir. Q. When was it you saw him? A. I saw Dr. Leone when he came from New Haven the first time we had the case here, in 1900. Q. January, 1900? A. Yes, sir. Q. Where did you see him? A. Right in the hall. Q. The hall of the court room? A. Yes, sir. I went up to the doctor and said, 'Doctor, how did you get me to sign this paper? How did I know?' He said, 'Well, I know now that I did make a mistake, but for my own professional affair I will have to stick to it; but that will be all right.'"

Mr. Dickson: I object to any conversation between this

witness and Dr. Leone tending to contradict the witness's own certificate in the proofs of death.

Objection overruled. Exception noted for defendant.

Mr. Dickson : I will make a further objection that this is sought to be done without calling Dr. Leone as a witness to explain his certificate or to prove the conversation by him.

Objection overruled. Exception noted for defendant. [2]

When C. C. A. Baldi was on the stand he was asked this question :

" Q. What knowledge had you at the time you made these statements in regard to these policies and proofs of death ? A. I had no knowledge at all ; none whatever; only Dr. Leone said it was all right, and I signed it. That is all I know about the matter. I never knew it was angina pectoris until I heard it afterward. Q. What knowledge did you have at that time, if any, in regard to this language in the statement signed by you, ' Four years ago (about) a mild attack of angina pectoris, which was cured at that time ? ' "

Mr. Dickson : I object to the witness being allowed to contradict his sworn affidavit to the company. I object to the claimant's contradicting and not merely explaining his own certificate contained in the proofs of death.

Objection overruled. Exception noted for defendants. [1]


The court charged in part as follows :

[The defendants have assumed the position that Dr. Rizzo in stating that he had no physician but Deakyne and had not consulted any other physician, when it appeared by the proofs of death furnished by Baldi that about four years ago he had been attended by Dr. Leone for a mild attack of angina pectoris, which was cured at the time, was guilty of a breach of the warranty that he was in sound health, and that the warranty as to medical attendance was material, and therefore they decline to pay the policy.] [5]

Contracts of this kind, Judge PENNYPACKER has already said in this case, like all other contracts, are binding upon both of the parties, and it is made a condition in the contract that he should be in sound health at that time. It is not a question at all as to whether or not he knew of the condition of his health, the policy is based upon that condition, and if he were not in sound

health at the time within the terms of the policy, then he is not entitled to recover.  The Superior Court has also laid down the rule that the term "good health" when used in a policy of life insurance, means that the applicant has no grave, important, and serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system.  Mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership, does not render the policy void.  [So the questions before you are entirely of fact, and what you have to decide in this case is, was Rizzo in good, sound health at the time he applied for the policy?  The answer that you give to this question will decide this case.  If you decide his answers in the application were untrue, and that they were material, and that he was not in sound health, then your verdict must be for the defendants.  But if, on the contrary, you find that he was in good health at that time, and that there was no misrepresentation of fraud on the part of Dr. Rizzo in obtaining the insurance, then your verdict should be for the plaintiff for the amount of the policy of $1,000 and interest. [6]

In order to determine the question as to whether or not he was in good health, it will be necessary to go over the evidence briefly, and in quoting the evidence to you I desire to caution you that you will take your recollection of it as it came from the witness stand and as you believe it and understand it, and not the mere quotation which I shall make for the purpose of assisting you in arriving at a conclusion.  I think it my duty to say to you that there were no witnesses produced by the defendants who testified that Dr. Rizzo had angina pectoris.  The only testimony on that subject was that furnished by the papers in evidence and that by Dr. Leone, and you recollect what Dr. Leone said.  It is substantially that he had a mild attack of this disease four years before, that he was cured of it, and that it was not of such a serious character that he had burdened his mind with it or made a memorandum of it.  It is also in evidence that Dr. Leone is an Italian who had been here but a few years, and that he did not understand the English language perfectly, and it may be that part of the trouble between the plaintiff and

the defendants was caused by him. If you find that Dr. Rizzo had this disease of angina pectoris as stated by Dr. Leone, he must have known of it, and if he did not state it to the company that was withholding a material fact, but you will recall that this evidence comes from the claimants themselves, and that Dr. Leone says it was a mild attack, and the physicians all agree that it is very difficult to diagnose a mild attack. If that is so, and if Dr. Leone was mistaken, it may very well be that Dr. Rizzo did not know or did not realize that he had had an attack. He might have regarded it like any slight ailment, as if you were going to an insurance company under like circumstances and asking for insurance and they asked you a similar question, and if you had had a cold or any slight complaint it might pass out of your mind, especially when several years had elapsed. That is a question for you to consider with this other evidence in making up your minds as to whether or not he did not have that attack. [If he did not have that attack, and if you believe that fact is established by the evidence, there is no necessity of making any further inquiry in the case, because the plaintiff is entitled to recover.] [8]

[If you believe on all the testimony in the case that the man had good health and was in sound health, it is your duty to give his estate the benefit of this insurance and to give a verdict for the plaintiff. If, however, you are convinced from the evidence that his health was bad; that he had this attack of angina pectoris, and that condition continued and that he died of it, your verdict should be for the defendants.] [9]

Defendant presented these points:

1. Under all the evidence your verdict must be for the defendant. *Answer:* I refuse this point. [10]

2. The statements made by Francis Rizzo in the application for this policy that he had never had disease of the heart; that since childhood he had had no illness save essential fever in 1892, and that he had consulted no physician other than Dr. Deakyne related to the risk assumed by the insurance company, and if there was an untrue warranty in the application in regard to any of them, the plaintiff cannot recover. *Answer:* I refuse this point. [11]

3. If you find that Francis Rizzo had an illness of angina pectoris after childhood and before he made the application for this policy, then a material warranty contained in the application was untrue, the policy is void, and your verdict will be for the defendant. *Answer :* I refuse this point. [12]

4. If you find that angina pectoris is a disease of the heart or a disorder showing that the heart is affected by a disease which causes angina pectoris, then the material warranty contained in the application, that Francis Rizzo had never had disease of the heart, was untrue, the policy is void, and your verdict will be for the defendant. By " disease " is meant an ailment or disorder such as to indicate a vice in the constitution or have a bearing upon the continuance of life, or such as, according to common understanding, would be called a disease. *Answer :* I refuse this point. [13]

5. If the learned court declines to charge the jury as requested in No. 4, then, but then only, it is respectfully requested to charge the jury as follows : " If you find that Francis Rizzo had an attack of angina pectoris before he made the application for this policy, and that angina pectoris is a disease of the heart or a disorder showing that the heart is affected by a disease which causes angina pectoris, then the material warranty contained in the application, that Francis Rizzo had never had disease of the heart, was untrue, the policy is void, and your verdict will be for the defendant. By " disease " is meant an ailment or disorder such as to indicate a vice in the constitution or have a bearing upon the continuance of life, or such as, according to common understanding, would be called a disease." *Answer :* I refuse his point. [14]

6. If you find that Francis Rizzo consulted Dr. Leone or any other physician except Dr. Deakyne before he made application for this policy, and particularly if he consulted Dr. Leone in 1893 or 1894 for angina pectoris, or for what was considered to be angina pectoris, then a material warranty contained in the application was untrue, the policy is void, and your verdict will be for the defendant. *Answer :* I refuse this point. [15]

7. If you find that at the time of the delivery of the policy in suit Francis Rizzo was suffering from disease of the heart, " disease " meaning an ailment or disorder such as to indicate a vice in the constitution or have a bearing upon the continu-

ance of life, or such as, according to common understanding, would be called a disease, then he was not at the time in sound health as required by the provisions of the policy, and the verdict will be for the defendant. *Answer:* This I affirm, but if you believe that he was in good health, then your verdict must be for the plaintiff for the amount of the policy, with interest. [16]

8. In determining whether or not Francis Rizzo had had disease of the heart before he made the application for this policy or was suffering from it at the time when he made this application, " disease " meaning an ailment or disorder such as to indicate a vice in the constitution or have a bearing upon the continuance of life, or such as, according to common understanding, would be called a disease, you will start with the fact that before making the application he had had an attack of angina pectoris, as stated in the proofs of death, and you will bear in mind the undisputed testimony of the doctors on both sides in regard to the nature of angina pectoris ; it is not disputed angina pectoris is a disorder which comes in short, painful attacks and that these attacks have a tendency to come again as long as the patient lives, and that sooner or later they may be expected to end in his death. It is not disputed, too, that even though an attack of angina pectoris may sometimes be fully cured, the underlying trouble that causes it remains to bring on other attacks which may result in death. *Answer:* I refuse this point. [17]

9. If you find that the certificate of Dr. Leone, sworn to on November 5, 1897, was not sent to the defendant company to be taken as part of the proofs of death in connection with this policy, then there is no evidence that the plaintiff met the defendant company's objections to the proofs of death previously furnished, and furnished to the defendant company satisfactory proofs of the death of Francis Rizzo, and your verdict will be for the defendant. *Answer:* I refuse this point. [18]

10. If the learned court declines to charge the jury as requested in Nos. 8 and 9, then, but then only, it is respectfully requested to charge the jury as follows :

If you find that the certificate of Dr. Leone, sworn to on November 5, 1897, was sent to the defendant company to be

taken as part of the proofs of death in connection with this policy, then in determining whether or not Francis Rizzo had had disease of the heart before he made the application for this policy, or was suffering from it at the time when he made this application, " disease " meaning an ailment or disorder such as to indicate a vice in the constitution or have a bearing upon the continuance of life, or such as, according to common understanding, would be called a disease, you will start with the fact that before making the application he had had an attack of angina pectoris, as stated in the proofs of death, and you will bear in mind the undisputed testimony of the doctors on both sides in regard to the nature of angina pectoris ; it is not disputed angina pectoris is a disorder which comes in short, painful attacks, and that these attacks have a tendency to come again as long as the patient lives, and that sooner or later they may be expected to end in death. It is not disputed, too, that even though the underlying trouble that caused it remains to bring on an attack of angina pectoris may sometimes be fully cured, other attacks may result in death. *Answer:* I refuse this point. [19]

Verdict and judgment for plaintiff for $1,310.99. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions ; (5–19) above instructions, quoting them.

*Arthur G. Dickson,* for appellant.—The court should have directed a verdict for the defendant : Murphy v. Ins. Co. 205 Pa. 444.

The plaintiff when on the stand could not contradict his own sworn statement contained in the proofs of death : Fisher v. Fidelity Mut. Life Assn., 188 Pa. 1 ; Benzeman v. Ins. Co., 13 Pa. Superior Ct. 363 ; Holleran v. Fire Assurance Co., 18 Pa. Superior Ct. 573 ; Wall v. Lloyd Society of Good Fellows, 179 Pa. 355 ; Siebelist v. Life Ins. Co., 19 Pa. Superior Ct. 221 ; Hermany v. Fidelity Mut. Life Assn., 151 Pa. 17 ; Ins. Co. v. Newton, 89 U. S. 32 ; Home Ben. Assn. v. Sargent, 142 U. S. 691 (12 Sup. Ct. Rep. 332).

We submit that the testimony as to what Dr. Leone said to the witnesses, while waiting outside of the court room, was

not admissible in evidence because it offends against the rule excluding hearsay: McCullough v. Montgomery, 7 S. & R. 17.

*Frederick A. Sobernheimer*, for appellee.—Statements in the proofs of death, while admissible in evidence as declarations against interest, do not estop the claimant: Baldi v. Ins. Co., 18 Pa. Superior Ct. 599; Holleran v. Ins. Co., 18 Pa. Superior Ct. 573; Rondinella v. Ins. Co., 18 Pa. Superior Ct. 613; Shannon v. Castner, 21 Pa. Superior Ct. 294.

As to whether the insured was in sound health at the time of the application for the insurance is always a question for the jury upon the evidence in the case: Dietz v. Metropolitan Insurance Co., 168 Pa. 504; Smith v. Metropolitan Life Insurance Co., 183 Pa. 504; Barnes v. Fidelity Mutual Life Assn., 191 Pa. 618; Wall v. Royal Society of Good Fellows, 192 Pa. 577; Schwartz v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 285.

An examination of the judge's charge will disclose that the trial judge covered all the points embraced in these assignments of error in his general charge. The charge was very full, complete and impartial: Kroegher v. McConway & Torley Co., 149 Pa. 444.

Proofs of death are at best merely conditions precedent to the bringing of an action and not of insurance: Braymer v. Commercial Mut. Accident Co., 199 Pa. 259; Thomas v. Ins. Co., 5 Pa. Superior Ct. 383; Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568.

OPINION BY RICE, P. J., March 14, 1904:

This action was brought by an administrator upon a policy of insurance issued in 1895 upon the life of Dr. Francis Rizzo. Dr. Rizzo died in September, 1897, of angina pectoris.

By the express terms of the policy itself, the answers and statements contained in the application were made warranties and a part of the contract. Amongst the conditions, indorsed on the back of the policy, subject to which it was issued and accepted, and which were made part of the contract, were the following: "3. If any statements contained in the written and printed application herein referred to be not true

. . . . this policy shall thereupon be and become void."
" 8. Proofs of death under this policy shall be made to the
home office upon blanks to be furnished by the company, and
the proofs shall contain answers to each and every question
propounded in said blanks to the claimant, physicians and other
persons to whom such questions shall be propounded, and shall
further contain the record and verdict of any coroner's inquest,
if one be held." " 9. . . . The proofs of death shall be evi-
dence of the facts therein stated in behalf of but not against the
company." In the application it was " declared, agreed and
warranted " by the applicant that the answers and statements
contained in the application and those made to the medical
examiner as recorded in parts A and B of the application were
full and true and were correctly recorded ; also " that any
false, incorrect or untrue answer, any suppression or conceal-
ment of facts in any of the answers . . . . shall render the
policy null and void." We now quote from the statement
made to the medical examiner : " 1. Have you ever had . . . .
disease of the heart ? No." " 3. Give full particulars of any
illness you may have had since childhood, and name of medical
attendant, or attendants. Essential fever, 1892, Dr. Deakyne.
Due to cold." " 4. When were you last confined to the house
by illness ? 1892." " 6. A. Name and residence of your
usual medical attendant. Dr. Deakyne, 9 and Pine, Phila.
B. When and for what have his services been required ?
Essential fever, 1892." " 7. Have you consulted any other
physician ? If so, when and for what ? No." In the claim-
ant's statement submitted as part of the proofs of death ap-
pears the following : " 9. A. What sickness previous to the
last one did deceased have, and when ? Four years ago (about)
a mild attack of angina pectoris which was cured at that time.
B. Give names and addresses of physicians who attended or
prescribed for any sickness or ailment, previous to the last
sickness. Dr. L. V. Leone, Dr. Deakyne, 9th and Pine in 1892,
essential fever." In the supplemental statement of Dr. Leone,
the physician who attended the insured in his last illness, which
was furnished as part of the proofs of death in compliance with
the company's demand for a more complete statement on his
part, appears the following : " 9. For what disease or diseases
have you at any time attended deceased prior to last illness,

and what was their duration? Dates of attendance. Day. Month. Year. Diseases. Duration of diseases. About four years ago some time between fall of 1893 and spring of 1894 I attended Dr. Rizzo for a mild attack of angina pectoris. Visited him not more than three times. After first visit he improved at once, the other two visits were more friendly than medical. Gave him inhalation of amyl nitrate and a purge. The case was so mild it left no impression upon my memory and I find no record of it. I cannot possibly remember the exact dates of my visits."

To rebut this prima facie defense the plaintiff offered and was permitted to testify, that his statement in the proofs of death above quoted was based not upon knowledge of his own, for he had none, but upon information he received from Dr. Leone; also to show by his own testimony and that of other witnesses, that after this suit was brought Dr. Leone admitted that his statement as to having attended Dr. Rizzo professionally prior to the date of the application was untrue, but for the sake of his own professional reputation he would have to stick to it. The admission of this testimony is the subject of the first four assignments of error.

In North American Life & Accident Insurance Company v. Burroughs, 69 Pa. 43, the beneficiary in her affidavit, furnished as part of the proofs of death, stated that the injury happened while the deceased was unloading hay, when he accidently strained himself; the affidavit of the physician stated that death was from an accident by exertion in hauling in hay; the proof on the trial was that the injury was from a blow from a pitch fork while hauling in hay. In the disposition of the question whether this variance between the preliminary proofs and the evidence given on the trial would prevent recovery, the Supreme Court, per WILLIAMS, J., said: "It seems to us that under the terms of the policy the plaintiff is entitled to recover if she has given sufficient preliminary proof of the injury though she may have unwittingly ascribed it to a wrong cause. It is not such a variance as should be regarded as fatal." In Lebanon Mutual Insurance Co. v. Kepler, 106 Pa. 28, the trial court refused upon request to charge, that the plaintiff having made his proofs of loss, and delivered the same to the company's agent, was precluded from recovering a greater sum

than was set forth in the proofs. This was held not to be error. " There is no magic in a proof of loss which prevents a correction of errors contained therein. Nor is it an estoppel. It was perfectly proper to show, as was done in this case, the circumstances under which the proofs of loss were made out, and the rest was for the jury," per PAXSON, J. The question as to the conclusiveness of an admission contained in proofs of death arose in Fisher v. The Fidelity Mutual Life Association of Philadelphia, 188 Pa. 1. Chief Justice STERRETT stated the question as follows : " The further position, that plaintiff was precluded from recovery because the proofs of death in this case established the fact of death by suicide, is also untenable under the evidence. In the 'claimant's statement' filed as 'proofs of death,' to which a copy of the coroner's inquest and the testimony given thereon were attached, plaintiff entered the following protest: ' I have been informed the verdict was suicide, but I decline to be bound by it.' The defendant made no request for further proofs, but accepted them as filed. On the trial, it attempted to prove the defense of suicide by offering the proofs of death and the copy of the coroner's notes, as admissions by the plaintiff. But their force in that regard was very much weakened, if not wholly overcome by the protest. By attaching a copy of the verdict and depositions plaintiff admitted their existence, but by his protest he expressly declined to admit the truth of the fact which the company sought to establish by them. It certainly has no right to complain of the manner of their submission to the jury." The case differs to such an extent from the present in its facts that it cannot be said that it absolutely rules it; its bearing upon the question under consideration consists in the recognition given to the principle decided in the preceding case, as shown by the following quotation from the opinion of the chief justice : " Two of the three cases cited by defendant as authority for its position are to the effect that a plaintiff is bound by admissions contained in the proofs of death and cannot offer any evidence to contradict or vary them ; but the contrary has been held in this state : Lebanon Mut. Ins. Co. v. Kepler, 106 Pa. 28, 34." This principle has been recognized directly or impliedly in our own cases : Benseman v. Prudential Insurance Co., 13 Pa. Superior Ct. 363 ; Holleran v. Life As-

surance Co., 18 Pa. Superior Ct. 573 ; Baldi v. Metropolitan Life Insurance Co., 18 Pa. Superior Ct. 599 ; Siebelist v. Metropolitan Life Insurance Co., 19 Pa. Superior Ct. 221 ; Brumbaugh v. Home Mutual Fire Insurance Co., 20 Pa. Superior Ct. 144. In 2 May on Insurance, sec. 465, 4th ed., the rule is stated as follows : " Required preliminary proofs when furnished are only evidence that the insured has complied with the requisitions of the policy, and are inadmissible as evidence for the plaintiff to prove the issue on the trial ; and although the statements in them will be taken against the insured as statements against interest, he may show that the statements themselves are without foundation, and were inadvertently made. Such inadvertent mistakes are without effect to estop insured from showing the truth." This doctrine is sustained by the great weight of authority as will be seen by an examination of the cases cited in the notes to John Hancock Mutual Life Insurance Co. v. Dick, 44 L. R. A. 846.

But it is argued that the claimant is not a competent witness to contradict his own sworn statement contained in the proofs of death. It is to be noticed that his affidavit to the proofs of death was to the best of his knowledge and belief. We are unable to conclude that he was thereby precluded from testifying that his answer to the question as to prior illness of the insured and as to the attendance therefor of a physician was based exclusively on information coming from what he had a right to suppose was a reliable source. A perusal of the questions propounded by the company shows that many of them must in ordinary cases be answered by an administrator upon belief. He is of course bound to the exercise of good faith, but he is not required to warrant the absolute correctness of his answers ; nor did the plaintiff in the present case warrant it. To hold that it was competent to vary or even contradict them by proof of mistake but that it was not competent for the person who made it to explain how it occurred would be a harsh rule and not in accordance with the authorities. Whether his testimony in explanation of his prior statement was to be credited was for the jury, but we entertain no doubt as to its admissibility.

It was objected further that it was not competent to contradict the statement of Dr. Leone by proof of his subsequent

unsworn declarations and admissions inconsistent therewith. There would be plausibility, at least, in this objection, if the selection of the witness to make the statement and the determination of what should be contained in it had rested with the claimant. But it is to be borne in mind that he had no option in that regard. The proofs were required to be made on blanks furnished by the company, and "to contain answers to each and every question propounded in such blanks to the . . . . physicians and other persons to whom such questions shall be propounded." Thereby the company was enabled to obtain the statement of the physician as to matters occurring before the policy was issued, which it could use in evidence without calling him as a witness. The furnishing of such statement was a condition precedent to the institution of the action, but to say that because the complainant complied with the condition he thereby gave credit to the witness and to every answer contained in his statement, much more, that he was estopped to contradict the statement in any particular would be contrary to sound principle and the weight of authority. True it was evidence of the facts therein stated in behalf of but not against the company, but this was not because the claimant vouched, or was responsible, for the statements, but because it was so provided in the policy. By these provisions the company (1) was enabled to introduce the statement of the physician, for which the plaintiff was not responsible, as prima facie evidence of the fact that prior to the date of the application he had attended the insured professionally for a disease of the heart; and (2) was entitled to have it taken as conclusive evidence of that fact unless there was countervailing evidence to the effect that the statement was untrue; and (3) even if there was such opposing evidence, was entitled to have the statement submitted to the jury as evidence, but not as conclusive evidence of the facts therein stated. This we apprehend is the entire effect as evidence which the parties to the policy intended should be given to the answers made by the physician and other third persons to questions propounded by the company. If the witnesses are to be believed, it would have been idle for the plaintiff to put the physician on the stand to explain his statement, for he declared that although it was untrue he would be compelled to

stick to it for. the sake of his professional reputation. . In connection with other testimony tending to show that at the date of the application the insured had no disease of the heart—thus inferentially contradicting or at least weakening the effect of the physician's statement that prior to that time he had attended him for a disease of the heart—we think it was competent to attack the. veracity of the .witness and the reliability. of his statement by proof of his contradictory statements relating to that matter. Therefore these assignments are overruled.

It follows that the assignments which relate to the refusal to charge that the fact that the insured had had an attack of angina pectoris prior to the date of the application was conclusively established by the proofs of death must also be overruled: Under the evidence this was a question of fact for the jury; but the defendant was entitled to have them plainly instructed as to the materiality of the above quoted statements in the application and as to what their verdict should be in case they found them to be untrue. The act of 1885 provides against the effect which formerly attached to questions and answers set forth in the application, which often were of no consequence as to the risk .involved but which the courts were obliged to uphold simply because they were warranties. But it is well settled by recent decisions that the act has no application in cases where the answer was false and related to some matter material to the risk. Where it is doubtful whether the matter was material, the question of materiality must be submitted to the jury, but where it was palpably and manifestly material to the risk it is the duty of the court so to charge. The answers under consideration belong to the latter class. " As the act of 1885 made no change in the law where the matter in question was material to the risk, the duty. of the court to pronounce upon this subject was the same after as before the act. . . . As it was always the duty of the court before the act of 1885 to determine the materiality of the question and answer in cases which were perfectly manifest and free from all doubt, and the act makes no change in the law in such cases, so the same duty remains since its passage : " Lutz v. Metropolitan Life Insurance Co., 186 Pa. 527 ; March v. Metropolitan Life Insurance Co., 186 Pa. 629; Smith v. Northwestern Mutual

Life Insurance Co., 196 Pa. 314. This doctrine has been reaffirmed in the very recent case of Murphy v. The Prudential Insurance Co., 205 Pa. 444, and was applied by us in the case of Arnold v. Metropolitan Life Insurance Co , 20 Pa. Superior Ct. 61. In the Murphy case Justice MESTREZAT reviewed the authorities and summed them up as follows: "We have held it to be error to submit the case to the jury where the uncontroverted evidence shows that the insured made false answers to questions as to when insured was last attended by a physician and for what cause, how long since he had consulted a physician and for what disease, and as to whether he had ever been sick, had any serious illness, had ever.consulted a physician, had ever had spitting of blood, did not have consumption,: was insured in any other company, had applied for insurance in any other company and been rejected, had always been temperate, had had any medical attendance within the year prior to the application, and if so, state disease and give name of physician. It has always been held that the court must declare as material a false statement to a request that the insured give full particulars of any illness he might have had; and also an untrue statement that no life insurance company had declined or postponed an acceptance of a proposal to insure applicant's: life. In each instance it was held to be the duty of the court to pronounce the answer material to the risk." Applying this, principle to the case in hand the defendant was entitled to have the jury plainly instructed that the statements of the insured contained in the application relative to his having had a disease of the heart and to the attendance of a physician for prior illness were material to the risk, and that if either was found to be false or untrue this would avoid the policy; to be more specific, that if prior to the date of the application the insured was attended professionally by Dr. Leone for what was considered to be an attack of angina pectoris, the plaintiff could not recover. As was said by our Brother BEAVER in Arnold v.. Metropolitan Life Insurance Co., supra, if this was of sufficient importance to induce the insured to consult a physician, it was of sufficient importance to be mentioned in his answers to the questions propounded by the medical examiner—these answers being made warranties—so as to put defendant on its guard and to enable it to make such inquiries and examination as

would satisfy it in regard to the nature of the attack and its cause. Clearly therefore the defendant was entitled to an affirmance of its second, third, fifth and sixth points. We are unable to agree with the plaintiff's counsel in his contention that the questions raised by these points were fully and correctly answered in the general charge. For example the learned judge said: "If you believe on all the testimony in the case that the man had good health, and was in sound health, it is your duty to give his estate the benefit of this insurance, and to give a verdict for the plaintiff. If, however, you are convinced from the evidence that his health was bad; that he had this attack of angina pectoris, and that the condition continued and that he died of it, your verdict should be for the defendants." Similar expressions will be found in other parts of the charge assigned for error. So also in answering the defendant's seventh point, which should have been unqualifiedly affirmed, he said: "This I affirm, but if you believe that he was in good health then your verdict must be for the amount of the policy with interest." From the charge as a whole, and the answer to the defendant's points, the jury might very naturally and justifiably infer that the single question for them to decide was whether the insured was in good health at the date of his application, and that if they decided that question against the defendant's contention the plaintiff was entitled to recover. This presentation of the case was inadequate and erroneous, because it left out of view the defense based on the answers and statements contained in the application which were made warranties, and the prima facie evidence furnished by the proofs of death that these were untrue in matters material to the risk.

In his submission of the case to the jury the learned judge treated the supplemental statement of Dr. Leone furnished in compliance with the company's demand for a more complete statement on his part, as part of the proofs of death, and was warranted in so doing by the evidence; therefore refusal of defendant's ninth point was not reversible error.

Judgment reversed and venire facias de novo awarded.