# Baldi v. Metropolitan Insurance Company, Appellant.

*Insurance—Life insurance—Application attached to policy—Act of May 11, 1881, P. L. 20.*

In an action upon a policy of life insurance where it appears that the paper in the suit is a single sheet printed in three divisions, the first headed " A. Application to the Metropolitan Life Insurance Company," the second, "B. Statements made to the Medical Examiner," the third," C. Medical examination and report," and immediately opposite the last mentioned caption are the words in parenthesis, " No part of the declaration of the applicant," and it appears that part A contained a warranty as to the answers and statements contained in parts A and B, and it also appears that part A was signed by the applicant, but that part C was not signed by the applicant, and was dated two days after A and B were signed, part C is not part of the " application as signed by the applicant," within the meaning of the Act of May 11, 1881, P. L. 20.

*Insurance—Life insurance—Evidence—Expert.*

Where in an action upon a policy of life insurance, a physician is called as an expert to testify as to the nature of the disease of which the insured died, and as to which it is alleged the insured made false representations, the witness may be permitted, at the request of either party to the issue, to testify whether the disease is easy or difficult to diagnose.

*Insurance—Life insurance—Evidence—Testimony of neighbor as to health.*

In an action on a life policy where the insured is alleged to have made false representations as to health, a near neighbor and friend of the insured may be permitted to testify that the appearance and conduct of the insured were those of a sound healthy man, but the jury should be cautioned as to the weight to be given such testimony.

*Practice, C. P.—Evidence—Absent witness—Continuance.*

Where on a motion for a continuance on account of the absence of a material witness for the defendant, an affidavit is presented stating what the witness would testify to if present, and the plaintiff admits that he would

so testify, and the motion to continue is refused, and at the trial the affidavit is offered in evidence by the defendant, the plaintiff may in rebuttal prove contradictory statements made by the absent witness.

*Insurance—Life insurance—" Good health."*

The term " good health " when used in a policy of life insurance means that the applicant has no grave, important and serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy void.

In an action upon a policy of life insurance where the defendant alleges misrepresentations as to health, it is not error for the court to refuse a point as follows : " If you find that at the time of the delivery of the policy in suit the defendant was suffering from disease of the heart, then he was not at that time in sound health, as required by the provisions of the policy, and the verdict will be for the defendant." Such a point could not be affirmed without explanation of the meaning of the terms.

*Insurance—Life insurance—Proofs of death—Admissions.*

Statements in the proofs of death while admissible in evidence as declarations against interest, do not estop the claimant.

*Insurance—Life insurance—Statements as to health—Question for jury.*

In an action on a policy of life insurance it appeared that the answers and statements contained in the written application were made warranties and a part of the contract. The proofs of death stated that four years before the date of his death the insured had had a mild attack of angina pectoris which was cured at that time. The insured died of angina pectoris about three years after the date of the policy. There was no reference to angina pectoris in the application. Experts for the company testified that angina pectoris is a recurrent disease, and is incurable, and that a person having had an attack of it could not afterwards be in sound health. The medical examiner for the company testified that at the date of the application the insured was " in good sound health " and that he found the heart apparently sound, and in normal condition. There was testimony as to the possibility of false angina pectoris being mistaken for the true disease, and that the disease was difficult to diagnose. *Held,* that the question whether the insured was in sound health at the date of the policy was for the jury.

Argued Oct. 10, 1901. Appeal, No. 2, Oct. T., 1901, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1897, No. 741, on verdict for plaintiff in case of Charles C. A. Baldi, Administrator of Francis Rizzo, Deceased, v. Metropolitan Life Insurance Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit on a policy of life insurance. Before PENNY-PACKER, P. J.

At the trial it appeared that on January 25, 1895, the defendant issued a policy of life insurance for the sum of $1,000 upon the life of Francis Rizzo. The insured died on September 11, 1897. In the proofs of death it was stated that the insured four years before his death had a mild attack of angina pectoris which was cured at that time. No reference was made to angina pectoris in the application. The defendant's experts testified that angina pectoris was a recurrent and incurable disease. The medical examiner for the company testified that at the date of the application the heart of the insured was in a normal condition.

The court under objection and exception admitted in evidence, the paper particularly described in the opinion of the Superior Court. [1–3]

Under objection and exception the plaintiff was permitted on cross-examination of Dr. Frederick A. Packard's, a witness for defendant, to ask the witness whether it was easy to diagnose a case of angina pectoris, or whether it was difficult. [4]

Dr. James Tyson, a witness for plaintiff, was asked this question :

" Q. State whether it is easy or whether it is difficult to diagnose a case of agina pectoris ? "

Mr. Dickson : What is the purpose of the offer ?

Mr. Sobernheimer : To attack what the other witnesses said and to get the doctor's knowledge on the subject.

Objected to. Objection overruled. Exception to defendant. [5]

" A. It is sometimes easy and sometimes quite difficult. There are cases of angina pectoris in which the symptoms of angina pectoris are so mild that it is impossible to say whether they show that disease or not, as there are other conditions which produce like symptoms—that is, of the mild form. A typical case of angina pectoris is not difficult to make a diagnosis of."

When Dominic Biello, a witness for plaintiff, was on the stand, the following offer was made :

That either in the fall of 1892 or the fall of 1893, the witness was called upon by Dr. Rizzo's wife to go for Dr. Deakyne, as Dr. Rizzo was sick. That the witness went to Dr. Deakyne's house, and he not being in, left word for him to call at Dr.

Rizzo's house.    That the witness called upon Dr. Leone, but he was sick and could not come.

That the witness called next A. M. upon Dr. Rizzo and found Dr. Deakyne in attendance, and asked what the matter was with Dr. Rizzo, and he said that Dr. Rizzo had a heavy cold and fever.    That Dr. Rizzo said to witness that he should not have called Dr. Leone.    That he has been on very intimate terms with Dr. Rizzo and knows that he was always in good health since that time and up to his death.    That upon the last trial of this suit the witness was asked by Dr. Leone what he would testify to, and the witness replied that he was going to say that Dr. Rizzo was never sick, as said by Dr. Leone, in the spring of 1893 or 1894, and that Dr. Leone did not attend to Dr. Rizzo as a doctor, and was not present when Dr. Rizzo was sick, but that Dr. Deakyne was.    That Dr. Leone replied that he had made a mistake in the proofs of death, and that the witness was true, but that if the witness testified to that it would compromise him.    That he had not understood the meaning of the questions, being in English language, but professional honor required him to stick to what he was going to say.    That he, Dr. Leone, was going to say, when called, that Dr. Rizzo had only a mild attack of angina pectoris, and that he called the next day and found Dr. Rizzo mixing drugs, and that he gave no treatment, but asked whether he had nitrate of amyl in the store, and that Dr. Leone replied that he had not, and that he suggested that he had better get some.

The Court: You can show the knowledge of the witness of Dr. Rizzo and the state of his health and what he saw about him; you may tell us.

Exception to plaintiff.

Mr. Dickson : I ask the court to allow an exception to the testimony as to the point just mentioned, inasmuch as it is not such testimony as is material for the reason that the unsoundness of his health upon which the defendant relies was not of the kind to be ascertained either by a layman or by a physician on external examination.

The Court: The witness may describe his appearance and any facts he saw concerning his physical condition.

Exception to defendant. [6]

Under objection and exception plaintiff was permitted to in-

troduce evidence tending to contradict an affidavit made on an application for continuance as to what Dr. Vincent Correale would testify to if present. [7, 8]

The court charged in part as follows :

[There is but a single, narrow question of fact which you are called upon to determine, and that is the question as to whether upon the day that this policy was issued, January 25, 1895, Rizzo was in sound health.] [9]

Defendant presented these points :

1. Under all the evidence your verdict must be for the defendant. *Answer :* Refused. [10]

3. If you find that angina pectoris is a disease of the heart, or a disorder indicating that the heart is diseased, then the material warranty contained in the application that Dr. Rizzo, the insured, had never had disease of the heart, is untrue, the policy was void, and the verdict will be for the defendant. *Answer :* Refused. [11]

6. If you find that Dr. Rizzo, the insured, consulted Dr. Leone or any other physician, except Dr. Deakyne, and particularly if he consulted Dr. Leone for angina pectoris in 1893 or 1884, then a material warranty contained in the application was untrue, the policy was void, and the verdict will be for the defendant. *Answer :* Refused. [12]

11. If you find that at the time of the delivery of the policy in suit the decedent, Francis Rizzo, was suffering from disease of the heart, then he was not at that time in sound health, as required by the provisions of the policy, and the verdict will be for the defendant. *Answer :* Refused. [13]

Verdict and judgment for plaintiff for $1,189,69. Defendant appealed.

*Errors assigned* were (1–8) rulings on evidence, quoting the bill of exceptions. (9–13) Above instructions, quoting them.

*Hazard Dickson,* for appellant.—The rule that " the whole of a paper must be offered in evidence, and not a part," as it is generally expressed, does not mean that whatever is contained in the sheet of paper or is physically annexed to it must be offered ; that were to confound paper in the physical sense and document : Campbell v. French, 2 Cox's Cases in Eq. 286 ;

Bowes v. Fernie, 3 Mylne & Craig, 632; Bull v. Clarke, 15 Common Bench (109 E. C. L.), 852; Cottrell v. Warren, 18 Pa. 487; Morris v. State Mutual Life Assurance Co., 183 Pa. 563.

The proofs of death operate as admissions available to the insurer: Mutual Life Ins. Co. v. Newton, 22 Wallace, 32; Haverstick v. Penna. R. R. Co., 171 Pa. 101; Frick v. Barbour, 64 Pa. 120; Ginder v. Bachman, 8 Pa. Superior Ct. 405.

The insured was shown to have been in unsound health at the date of the policy: Heinemann v. Heard, 62 N. Y. 448.

*Frederick A. Sobernheimer*, for appellee.—It is submitted that the ruling of the learned trial judge, following Morris v. State Mutual Life Assurance Co., 183 Pa. 563; Fisher v. Fidelity Mutual Life Assn., 188 Pa. 1, was correct.

Proofs of death are susceptible to explanations by a plaintiff who has brought suit upon a life insurance policy. He is not bound by the admissions contained in the proofs of death and may offer evidence to vary them: Fisher v. Fidelity Mutual Life Association, supra; Thomas v. Western Insurance Co., 5 Pa. Superior Ct. 392.

There is no direct evidence that the insured had an attack of angina pectoris. It was a disputed question which necessarily would have to be passed upon by the jury.

The friends and neighbors who knew the insured and had dealings with him all testified as to the insured being a healthy man. Such testimony was admitted in Dietz v. Metropolitan Life Insurance Co., 168 Pa. 504, and in Wall v. Royal Society of Good Fellows, 192 Pa. 577.

As to whether the insured was in sound health at the time of the application for the insurance, is always a question for the jury upon the evidence in the case: Smith v. Metropolitan Life Insurance Co., 183 Pa. 504; Barnes v. Fidelity Mutual Life Association, 191 Pa. 618; Wall v. Royal Society of Good Fellows, supra; Schwartz v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 285.

OPINION BY RICE, P. J., January 21, 1902:

This was an action upon a policy of life insurance in which the answers and statements contained in the written application therefor were made warranties and a part of the contract.

1. The question raised by the first three assignments of error is whether the "application as signed by the applicant" was copied in the policy within the provisions of the act of assembly of May 11, 1881, P. L. 20, so as to render the warranties in the application available to the insurer.

The paper in question is a single sheet. On the upper half of the first page is what is designated at its head as "A. Application to The Metropolitan Life Insurance Company." On the upper half of the reverse page is what is designated at its head as "B. Statements Made To The Medical Examiner." On the lower half of the latter page is what is designated as "C. Medical Examination and Report." Immediately opposite to the last mentioned caption are the words in parenthesis, "No part of the declaration of the applicant." The court below held that the part of the paper designated C was in effect part of the application, and ought to have been copied in or attached to the policy in order to make it available to the insurer.

Considerable stress is laid upon the fact that the clause of the policy relative to the answers and statements contained in the printed and written application is not expressly limited to the answers and statements contained in A and B. This is true, but it does not answer the question for decision, namely, what is the application? This question is to be determined by an inspection of the paper itself. Examining it more critically we find, that part A was signed on January 19, 1895, by the applicant and contains this clause : "It is hereby declared and warranted by the undersigned that the answers and statements contained in the foregoing application and those made to the medical examiner as recorded in parts A and B of this sheet, together with this declaration shall be the basis and become part of the contract of insurance with the Metropolitan Life Insurance Company ; that they are full and true and are correctly recorded and that no information or statement not contained in this application" (evidently referring to part A). "and in the statements made to the medical examiner" (evidently referring to part B) " received or acquired at any time by any person shall be binding upon the company, or shall modify or alter the declarations and warranties made therein." Referring now to part .B, we find that it is headed, " Statements made to the medical examiner by Francis Rizzo, M. D., in con-

nection with application on reverse of this sheet." It is thus made a part of the application. Construing these two parts as a connected whole we find conclusive evidence as to what answers and statements were intended to be made warranties and part of the contract. They are the answers and statements recorded in parts A and B. These were signed by the applicant. Part C was not. The latter bears date two days after A and B were signed and for aught that appears in this case may never have been seen by the applicant. The medical examiner was not his agent but was selected by the company. His declarations although indorsed on the paper itself could not be offered in evidence against the plaintiff in the absence of extrinsic evidence that they were authorized or assented to by him. To remove all doubt upon this point it was expressly noted at the head of part C that it was "no part of the declaration of the applicant." This operated to the benefit of the insurer as well as the insured. By no process of reasoning can it be held that the latter warranted the truth of the answers and statements of the medical examiner contained in part C. It seems to us equally clear that the former in its effort to comply with the provisions of the act of 1881, was justified in treating part C as not part of the application. The facts above referred to plainly distinguish the case from Morris v. State Mutual Life Assurance Co., 183 Pa. 563, and Fisher v. Fidelity Mutual Life Association, 188 Pa. 1. In the first mentioned case the medical examiner's report, which was held to be part of the application was in fact answers given by the applicant to questions asked by the medical examiner and entered in the latter's handwriting; it was signed by the applicant; and in a preceding part of the paper he had agreed "that the foregoing answers and statements, also those made to the company's medical examiner, are true and full, and are offered as a consideration of the policy contract." Thus the answers were brought into and made part of the application by express reference. The paper corresponded in all essential particulars to part B of the paper under consideration. In the Fisher case the point decided is correctly stated in the syllabus as follows: The omission to attach to a policy of insurance a portion of the application is a failure to comply with the requirements of the Act of May 11, 1881, P. L. 20, and if it appears that there is a

supplemental application which was not attached to or indorsed on the policy the original or principal application is not admissible in evidence. The supplementary application there referred to was entitled, " Statement made to the medical examiner as supplementary to and part of the application made by the undersigned," etc., and was signed by the applicant. It likewise corresponded to part B of the paper under consideration. Speaking of the act of 1881, Chief Justice STERRETT said: " That act requires that a copy of the entire application, not merely a part thereof, shall be attached. The omission of a part, which of course includes a supplementary part, operates to exclude the whole." The differences between these cases and the present are important. Here the application was complete without part C. Part C was not signed by the applicant; it does not purport to contain answers and statements of the applicant to the company or to the medical examiner, as in the cases cited, but statements of the medical examiner to his principal; it was not made part of the application by reference ; on the contrary, by express declaration on its face, was excluded. We are clearly of opinion that it was not part of the " application as signed by the applicant."

2. The application having been excluded, the defendant was compelled to rest its defense on that condition of the policy which provided that no obligation was assumed by the company unless at the date of the policy the insured was in sound health. The policy was dated January 25, 1895, the insured died September 11, 1897. In the proofs of death submitted to the company by the claimant appear, (1) the claimant's statement; (2) the attending physician's statement. By the latter, as well as the former, it appears that the cause of death was " syncope from angina pectoris," and that the duration of his last illness was eleven days. In the former appear the following questions and answers: " What sickness previous to the last one did deceased have, and when ? Four years ago (about) a mild attack of angina pectoris which was cured at that time. Give names and addresses of physician who attended deceased or prescribed for any sickness or ailment previous to the last sickness. Dr. L. V. Leone, Dr. Deakyne, 9th & Pine, in 1892, essential fever." For the purpose of showing that a man who had an attack of angina pectoris in latter part of 1893, or early part of 1894, and

who died of the same disease in September, 1897, could not be in sound health in January, 1895, the date of the policy, the defendant called Dr. Packard as an expert. Having testified in that capacity as to the nature of the disease and its symptoms, he was asked upon cross-examination whether it is easy or difficult to diagnose the disease. This cross-examination was pertinent, if for no other purpose, to test the ability of the witness. Hence the court committed no error in overruling the objection to the question. Further, the subject of investigation, namely, the nature and symptoms of angina pectoris, was one, which, by reason of its relation to the main question, called for expert testimony. Where the expert is competent to testify upon that general subject, we can see no reason why he may not, as part of his description of the nature and symptoms of the disease, be permitted, at the request of either party to the issue, to testify whether the disease is easy or difficult to diagnose. Hence the court committed no error in overruling the objection to the question propounded in chief to Dr. Tyson, a witness called in rebuttal by the plaintiff. The fourth and fifth assignments are overruled.

3. The question raised by the sixth assignment of error is as to the competency of the testimony of a near neighbor and friend of the insured to the effect that his appearance and conduct were those of a sound healthy man. The witness saw the insured almost daily and was on intimate social terms with him. It, therefore, cannot be claimed that he was not qualified to testify as to that fact, that is, as to his outward appearance, and we are not convinced that the fact itself was wholly irrelevant. The testimony may not have been sufficient in itself to overcome the presumptions arising from the admissions contained in the proofs of death. Nor standing alone, was it of very great value, because, as the learned judge told the jury, the witness was not an expert upon the question for decision, and a man may have the appearance of being well, when he is really suffering from an incurable disease. But the question is not as to the weight to be given to the testimony, but as to its revelancy. The trial judge committed no error in admitting it for what it was worth, and he properly cautioned the jury as to the weight to be given to it. This assignment is overruled.

4. We infer from the briefs of counsel, although it does not

clearly appear in the docket entries or notes of trial, that the defendant moved for a continuance of the cause upon the ground of the absence of Dr. Correale, a material witness, and that in accordance with the rule of court an affidavit was filed in which it was averred that if he were present he would testify, " that he was called in consultation with Dr. L. V. Leone, the attending physician in September, 1897, and found Dr. Francis Rizzo, the insured, suffering from recuring attacks of angina pectoris that resulted in his death." Thereupon, it would seem, the plaintiff admitted that he would so testify, and in accordance with the rule the motion to continue was refused. On the trial this testimony of Dr. Correale as set forth in the affidavit was offered and read in evidence by the defendant. In rebuttal the plaintiff offered to prove contradictory statements made by him. This offer was objected to upon the ground that it was contradictory of the agreement that Dr. Correale, if present, would testify as above stated. The admission of this evidence is the subject of the seventh and eighth assignments of error. In no view could the evidence have been rejected for the reason stated in the objection. The plaintiff had not admitted the truth of the proposed testimony of Dr. Correale, nor had he agreed not to offer testimony to impeach him. It is urged further that the evidence was incompetent because his attention had not been first called to the alleged contradictory statements and an opportunity had not been afforded him to explain them. The answer to this suggestion is, that it was impossible to do so, because he was not present in court. The rule relied upon by the defendants' counsel is not an inflexible one, and it is now settled by the later cases that the question is one of sound discretion in the judge trying the case upon the circumstances before him : Cronkrite v. Trexler, 187 Pa. 100, citing Walden v. Finch, 70 Pa. 460, and Rothrock v. Gallaher, 91 Pa. 108. In Walden v. Finch, Mr. Justice AGNEW said : " Where the witnesses are all present, and the contradiction tends seriously to impair the credibility of the witness, or to reflect upon his character, a court would feel bound to give him an opportunity of explanation or denial, before suffering his testimony to be impeached by counterstatements. Under different circumstances a court would feel it proper to relax the rule." In this case the rule, which is based largely on a regard for the witness him-

self, could not have been enforced without sacrificing the interests of the party. The court was clearly right in refusing to enforce it at such a sacrifice. These assignments are overruled.

5. If the application had not been excluded the instructions complained of in the ninth assignment and the answers to points quoted in the eleventh and twelfth assignments would have been erroneous, but as the case stood after the application was excluded, the points referred to were inapplicable, and the instruction that the single question for the jury to decide was, whether on the date of the policy the insured was in sound health, was appropriate and correct. For these reasons the assignments referred to are overruled.

6. The defendant requested the court to charge, that if the jury found that at the time of the delivery of the policy in suit the decedent was suffering from disease of the heart, then he was not at that time in sound health, as required by the provisions of the policy, and the verdict should be for the defendant. The refusal to affirm this point is the subject of the thirteenth assignment of error. It is to be observed that in this point the court was not asked to take the question of "good health" from the jury, but only to declare that if the insured was suffering from a disease of the heart, he was not in good health. "Slight trouble, temporary and light illness, infrequent and light attacks of sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health. In other words, the term 'good health' when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy void:" 3 Joyce on Ins. sec. 2004, quoted with approval in Barnes v. Fidelity Mutual Life Assn., 191 Pa. 618. See also 1 May on Ins. (3d ed.) sec. 295. "In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon the general health and the continuance of life, or such as according to common understand-

ing would be called a disease; and such has been the opinion of text writers and judges:" Cushman v. U. S. Life Ins. Co., 70 N. Y. 72; 3 Joyce on Ins. sec. 2003; 19 Am. & Eng. Ency. of Law (2d ed.) 64. We do not suppose it will be contended that it is within the province of a jury to declare that one who is suffering from a disease (as above defined) of a vital organ is in sound health within the meaning of the policy. If, therefore, the term disease in the point was used and would have been understood by the jury in the sense above indicated, as distinguished from a mere trifling or temporary ailment, indisposition, disorder or trouble, the point should have been affirmed. But was it so used and would it have been so understood by the jury? It has been asserted by an eminent medical authority that the term disease "transcends definition." If scientists, lawwriters and judges find difficulty in defining the term, is it to be expected that an unlearned jury would apply to it its correct meaning, as related to the question here at issue, without explanation? Might they not apply to it the broader meaning which would include every disorder, whether temporary or permanent, trifling or serious? The question raised by this assignment is not free from difficulty, but our conclusion is, that the point could not have been affirmed without explanation of the meaning of the terms; and if we are correct in this conclusion, the refusal to affirm it was not reversible error. This assignment is not sustained.

7. The remaining assignment (tenth) alleges error in the refusal of the point, that under all the evidence the verdict must be for the defendant. In determining the correctness of this ruling, we must leave out of view the application which had been excluded from the evidence. The position taken by the defendant in this case and in the Rondinella case, which was argued at the same time, may be fairly stated as follows: It appears by the proofs of death that the insured had an attack of angina pectoris a year or more before the date of the policy; it appears by the testimony of the physicians called as experts, that angina pectoris is a recurrent disease and is incurable; a person having had an attack of angina pectoris cannot afterward be in sound health; therefore the insured could not have been in sound health at the date of the policy, and, such being the case, no obligation was assumed by the company. The logic would

be irresistible, if it was conclusively established that the insured had an attack of true angina pectoris at the time mentioned in the proofs. But it seems to be well settled in Pennsylvania that the statements in the proofs of death, while admissible in evidence as declarations against interest, do not estop the claimant. See Holleran v. Ins. Co. and cases there cited. Moreover, the statement, taken as a whole, does not admit the existence of a condition in 1893 or 1894, which necessarily implied that the insured was not in sound health in 1895. Even if we assume that angina pectoris is an incurable disease or is the symptom of an incurably diseased condition of the heart, the claimant must have been mistaken in one or the other branch of his statement. Was he mistaken in saying that the attack which the insured had was angina pectoris, or in saying that he was cured? The testimony of the company's medical examiner to the effect, that as a result of a careful and thorough examination made at the time the insurance was applied for, he found the applicant " in good sound health," that he " found the heart apparently sound, a normal condition " has an important bearing on the question. So also has the testimony as to whether angina pectoris is easy or difficult to diagnose, and the testimony as to the possibility of false angina pectoris being mistaken for the true disease. The fact that the cause of death was angina pectoris is also important, but it is needless to say that that fact would not be conclusive of the question whether the insured had an attack of true angina pectoris in 1893 or 1894. Without prolonging the discussion, we conclude that the court committed no error in submitting to the jury the question, whether the insured was in sound health at the date of the policy. The learned judge's review of the evidence sufficiently vindicates his ruling upon this point.

Judgment reversed and venire facias de novo awarded.