Borgon, Appellant, *v.* John Hancock M. Life Ins. Co.

378

Argued April 17, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Graff, JJ.

*Ralph C. Davis,* for appellant.—The condition of health of an insured at a particular time is usually and almost necessarily a question of fact to be submitted to a jury: Clark v. Met. Life Ins. Co., 62 Pa. Superior Ct. 192.

*D. C. Jennings,* for appellee.

Opinion by Keller, J., July 10, 1930:

Plaintiff recovered a verdict and judgment in the county court of Allegheny County on a policy of insurance, issued by the defendant on her husband's life, of which she was the beneficiary. Defendant asked the court of common pleas to allow an appeal from the judgment or to direct the county court to enter such judgment as might be proper on the whole record. The court of common pleas refused to allow an appeal, but directed the county court to enter judgment non obstante veredicto in favor of the defendant. Plaintiff appealed to this court.

The policy in suit was an "industrial" policy, issued without any written application by the assured but containing inter alia the following clauses: "This policy shall not take effect unless upon its date the insured shall be alive and in sound health," and "This policy shall be void: (1) If the insured ...... has been attended by any physician within two years before the date hereof, for any serious disease, complaint or operation; ...... unless such ...... previous disease is

specifically waived by an endorsement," etc. The policy was dated January 19, 1927. The assured died on April 14, 1927. The defense was that the assured was not in sound health on the date of the policy; that he died of cirrhosis of the liver, a serious disease, and had been attended by a physician for that disease within two years before the date of the policy; and that under said conditional clauses the policy never took effect and was void. See Connell v. Met. Life Ins. Co., 16 Pa. Superior Ct. 520; Panopoulos v. Met. Life Ins. Co., 96 Pa. Superior Ct. 325.

To support its defense it offered in evidence the proofs of death filed with it by the plaintiff, in which Dr. Rinard, an attending physician, had certified, under oath, that the assured had died in the Homestead Hospital on April 14, 1927 of hepatic cirrhosis; that the assured's health had, in his opinion, been impaired for seven months and nineteen days; that his first visit had been on February 25, 1927; his last visit on April 14, 1927; and that he had never attended assured before this illness; that assured had also been attended by Dr. Hartley of Homestead.

Dr. Hartley's affidavit, in the proofs of death, certified that he had attended the assured on October 15, 1926 for indigestion, duration two or three days, and on January 1, 1927 for indigestion, duration four days.

Against the protest and objection of the plaintiff the trial judge received in evidence, as part of defendant's case, a copy of the certificate of death filed in the Bureau of Vital Statistics at Harrisburg, in which Dr. Rinard, the attending physician, certified that he had attended deceased from May 1, 1925 to April 14, 1927, that he last saw him alive on April 14, 1927, and that death occurred on that date at 6:30 P. M.; that the cause of death was "cirrhosis (Atrophic) of liver acites abdominal and pleural. Duration 2

years"—to the question, what test confirmd diagnosis? he made answer, "Exam. and clinical cause."

Defendant called a physician, who had never attended assured, who described cirrhosis of the liver; said that it was a serious disease; that it was incurable; that its average duration is ten years and the shortest case on record, two years; and that a person having that disease was not in sound health.

Plaintiff called a number of witnesses well acquainted with the assured who testified that he was in good health on January 19, 1927, and had been for two years prior thereto; that he was a good healthy looking man, who carried on business for himself in Homestead, worked every day, ate his meals regularly, slept well, and never complained of ill health until the middle of February, 1927. These witnesses included not only the wife and oldest daughter of the assured, but also disinterested men who knew him well, lived near him, saw him three or four times a week and were acquainted with his state of health and general appearance, as well as his activities in his business.

The court of common pleas held that the evidence established that the assured was not in sound health on the date of the issuance of the policy, but was suffering from cirrhosis of the liver, a serious disease, and had been attended by a physician because of it within two years prior to the date of the policy; and that under the clauses above quoted the policy never took effect and was void. We cannot agree with this finding or conclusion.

The basic evidence on which the court's ruling rests consists of Dr. Rinard's affidavit in the proofs of death and the copy of his death certificate forwarded to the Bureau of Vital Statistics. He was not called and did not testify as a witness for defendant.

As to proofs of death, it has been held in this State,

time and again, that while they are admissible in evidence against the plaintiff the latter is not estopped at the trial by anything stated therein by physicians or others. Such statements are open to explanation or even to contradiction by the plaintiff: Holleran v. Life Assurance Co., 18 Pa. Superior Ct. 573, 576; Baldi v. Met. Life Ins. Co., 18 Pa. Superior Ct. 599, 612; Furey v. Met. Life Ins. Co., 49 Pa. Superior Ct. 592, 594; South Side Trust Co. v. Eureka Life Ins. Co., 74 Pa. Superior Ct. 566, 571; Felix v. Fidelity Mut. Life Ins. Co., 216 Pa. 95, 99; Fisher v. Fidelity Mut. Life Assn., 188 Pa. 1, 14; Lebanon Ins. Co. v. Kepler, 106 Pa. 28, 34. Where there is conflicting evidence as to whether the assured was in good or sound health at the time the policy was issued it is a question of fact for the jury: South Side Trust Co. v. Eureka Life Ins. Co., supra, p. 572; Clark v. Met. Life Ins. Co., 62 Pa. Superior Ct. 192, 196; Horne v. John Hancock Mut. Life Ins. Co., 53 Pa. Superior Ct. 330, 333; Smith v. Met. Life Ins. Co., 183 Pa. 504, 507; Barnes v. Fidelity Mut. Life Assn., 191 Pa. 618, 623. In many of the cases cited above a recovery by the plaintiff was allowed where the evidence was no stronger and just as conflicting as in this case. The evidence of the assured's good health was sufficient to raise a question of fact for the jury. The burden of proving that the assured was not in sound health and had been attended for a serious disease was on the defendant: Connell v. Met. Life Ins. Co., supra. This case is easily distinguishable from Siebelist v. Met. Life Ins. Co., 19 Pa. Superior Ct. 221, and Furey v. Met. Life Ins. Co., supra, where the plaintiff offered no evidence to contradict, explain or qualify the proofs of death.

The copy of the death certificate on file in the Bureau of Vital Statistics is at best no more conclusive on the plaintiff than the proofs of death. It was offered and received under authority of the Act of

June 7, 1915, P. L. 900, "An act to provide for the immediate registration of all births and deaths throughout the Commonwealth of Pennsylvania by means of certificates of births and deaths, and burial or removal permits; requiring prompt returns to the Central Bureau of Vital Statistics, as required to be established by the State Department of Health," etc. Section 7 of the act prescribed the form of certificate of death, and section 21 provided inter alia, "That the State Registrar shall, upon request, furnish any applicant a certified copy of the record of any birth, death, or marriage registered under provisions of this act, ...... and any such copy of the record of a birth, or death, or marriage, when properly certified by the State Registrar to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated."

There is some difference of opinion in various jurisdictions as to whether such a provision in a statute permits the introduction of the certificate as evidence of cause of death, and not merely of the fact of death, in actions concerned with private contract, such as suits on insurance policies, or applies to matters not within the personal knowledge of the person making the certificate,—whether it was the intention of the legislature to change the common law rule of evidence in controversies growing out of contract. The subject is treated at some length in Wigmore on Evidence, Vol. 3, sections 1642-1646 (2d Ed.), and cases cited from Utah (Bozicevich v. Kenilworth Mercantile Co., 58 Utah 458, 199 Pac. 406), Massachusetts (Broadbent's Case, 240 Mass. 449, 134 N. E. 632) and Michigan (Krapp v. Met. Life Ins. Co., 143 Mich. 369, 106 N. W. 1107), inter alia, in favor of their admission; and from Illinois (Howard v. Illinois T. & S. Bank, 189 Ill. 568, 59 N. E. 1106), Indiana (Brotherhood v. Barton, 46 Ind. App. 160, 92 N. E. 64), South Carolina

(Williams v. Met. Life Ins. Co., 116 S. C. 277, 108 S. E. 110), and England (Bird v. Keep, C. A. 1918, 2 K. B. 692), against their admission. See also Hennessy v. Met. Life Ins. Co., 74 Conn. 699, 52 Atl. 490; Shamlian v. Equitable Accident Co., 226 Mass. 67, 115 N. E. 46, in support of their admission, and Beglin v. Met. Life Ins. Co., 173 N. Y. 374, 66 N. E. 102; and Davis v. Knights of Honor, 165 N. Y. 159, 58 N. E. 891, against their admission. We are not required to decide this point, for it is not raised by any assignment of error. The provision from section 21 above quoted would seem to change the rules of evidence and make evidence admissible that would otherwise have been inadmissible as hearsay: McKinstry v. Collins, 76 Vt. 221, 56 Atl. 985. The title of the act contains no notice of any such change in the law of evidence, and the question may arise whether, in view of the decision of the Supreme Court in Spector v. Northwestern F. & M. Ins. Co., 285 Pa. 464, 471, this feature of the act is constitutional.

But if the act is valid in this respect and applies to actions based on private contract, the evidence so to be received is not conclusive but only *prima facie,* and is open to explanation and contradiction by the opposing party. There is no element of estoppel in the case, for the plaintiff had nothing to do with its preparation or filing. The doctor who made it was not sworn and the plaintiff had no opportunity to cross-examine. If evidence at all, it is evidence only for what it is worth, (Wigmore, Sec. 1646, p. 441), and concludes nobody. The defendant could have called the doctor himself, in which event the plaintiff could have sifted his evidence and found out how much of it was based on his own knowledge and how much on information received from others; and the latter would not have been admissible. The statute certainly does not make this hearsay information, which would ordinarily be inadmissible, conclusive against the plaintiff.

This is recognized in Bozicevich v. Kenilworth Mercantile Co., supra, in an opinion highly commended by Mr. Wigmore, where it is said: "Moreover, if the plaintiff in a case like the one at bar, is not satisfied with the statement contained in the certificate of death, he may always contradict the record by any proper evidence," p. 408. To the same effect, see Cohasset v. Moors, 204 Mass. 173, 179, 180, 90 N. E. 978.

Not being given under oath or subject to cross-examination it is not a very high grade of evidence at best, and where as in this case, it was flatly contradictory of the doctor's own affidavit in the proofs of death, it was for the jury to decide what weight was to be given it and not for the court to accept it as verity.

If cirrhosis of the liver is, as was testified to by defendant's expert witness, an incurable disease of from two to ten years' duration; and if the assured was in good, sound health up to the middle of February, 1927, as a number of witnesses gave evidence; then the jury were not bound to find that the assured was suffering from cirrhosis of the liver in January, 1927; they might rather conclude that the physician was mistaken in his diagnosis and that the assured died in April, 1927, from some disease other than cirrhosis of the liver; and in view of the contradiction contained in the doctor's two statements, the jury were not bound to find that he had ever treated the assured before February 25, 1927, or that he had any personal knowledge of the duration of his illness before that date.

We are of opinion that assured's sound health and his attendance by a physician for any serious disease within two years prior to the date of the policy were questions of fact for the jury, and that the court of

common pleas was not justified in ruling upon them as matter of law.

The assignment of error is sustained. The judgment is reversed and is now entered for the plaintiff on the verdict.