## Palyo, Appellant, v. W. & S. Life Ins. Co.

584

Argued April 26, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Joseph L. Pinkasiewicz,* for appellant.

*D. C. Jennings,* for appellee.

Opinion by Cunningham, J., October 3, 1934:

On May 20, 1929, the defendant insurance company, without a written application or medical examination, issued its policy of industrial life insurance, insuring the life of Susanna Palyo in the sum of $500.

The death of the insured occurred on August 31st of the same year; an action brought by her husband, as administrator of her estate, resulted in a verdict in his favor for the amount of the policy, with interest. Subsequently, the trial court granted defendant's motion for judgment in its favor n. o. v., and we now have this appeal by the plaintiff from that judgment.

The provision of the policy here involved reads: "No obligation is assumed by the company unless on

the date and delivery hereof the insured is alive and in sound health."

The defense interposed is thus stated in defendant's answer: "That upon the date of said policy, May 20, 1929, said Susanna Palyo was not in sound health and that she was at that time and had been for a considerable period prior thereto suffering from pulmonary tuberculosis for which she had been treated by a physician for a period of about five months prior thereto, to wit, from about January 1, 1929, and that by reason of said sickness said Susanna Palyo was not in sound health and no obligation was assumed by the company under the said policy and the same never took effect or became a valid and subsisting obligation of the company." Tender of the premiums, amounting to $5.76, was accordingly made and renewed at the trial.

Plaintiff, while testifying in chief, was asked: "On the day the policy was issued, was your wife in sound health?" to which he replied, "She was well, able to do all kinds of work."

On cross-examination he was shown two documents, each bearing what purported to be his signature and, together, constituting notice and proof of insured's death. The first was marked defendant's exhibit A and was entitled, "Statement of attending physician"; the second, exhibit B, was headed, "Statement of claimant." The introductory paragraph of exhibit A purported to have been signed by plaintiff, as claimant, and read: "I hereby submit with and as part of the proofs of death, under policy No. 8046297, issued on the life of Susanna Palyo, the following statement of attending physician [signed by Dr. Edward E. Evans] in compliance with conditions of said policy." Plaintiff's cross-examination reads: "Q. I show you two papers marked defendant's exhibits A and B and ask you if those are the proof of death which you filed?

A. I did not see those papers, nobody gave them to me. Q. I call your attention to this (indicating). Is that your signature? A. It looks like I signed, but I don't know whether those are the papers. Q. Is that your signature (indicating)? A. Yes, sir. I don't know whether those are the papers or not."

We think this testimony furnished a sufficient basis for the admission of the exhibits in evidence, when subsequently offered by counsel for defendant.

The defendant's evidence consisted of the testimony of one of its superintendents who identified exhibits A and B as the proofs filed by plaintiff, and stated that Dr. Edward E. Evans, who, as the attending physician, executed the medical certificate, had died prior to the institution of the action. Exhibits A and B were received in evidence over the objection of counsel for plaintiff.

In exhibit A, Dr. Evans certified that the immediate cause of the insured's death on August 31, 1929, at the age of thirty-three, was pulmonary tuberculosis; that his first visit in her last illness was made on January 1, 1929, when she had been ill but one day; that his treatment was continuous up to August 30, 1929; and that the history of the case was obtained by him from her husband. In exhibit B, executed by plaintiff, three material questions and answers read: "3. Cause of death? A. Tuberculosis. 7. When did deceased first complain of ill health? A. January, 1929. 8. When did deceased first consult a physician? A. January 1, 1929."

In rebuttal, plaintiff called a witness, George Astrab, who testified he had known the insured since 1919; that he saw her frequently; that in the latter part of May, 1929, "she was doing her work around there [her home]—she was healthy ...... she was doing her work in general. She looked well to me."

The trial judge submitted to the jury the question whether the insured "was in sound health at the time the policy was issued."

In so doing he erroneously charged that "the burden was upon the plaintiff to show that insured was in sound health at the time of the issuing of the policy." If the verdict had been in favor of the defendant, this error would have required a reversal, but, as the verdict was for plaintiff and the motion for judgment n. o. v. was granted solely "because of the admissions of the husband" shown in the exhibits, the error did not harm plaintiff.

Because the case is not free from difficulty, we have referred to every material item of evidence before the court when it was closed.

Fundamentally, the question is whether plaintiff permitted his clear admissions against interest, as contained in the proofs of death submitted by him to defendant, to remain so unexplained, uncorrected and uncontradicted, that it became the duty of the trial judge to decline to submit the question of the insured's sound health to the jury. If the trial judge should have affirmed defendant's point for binding instructions, the judgment n. o. v. was properly entered.

Several established principles of law are applicable to the situation created by the evidence. Whether defendant is liable under its policy depends upon the actual condition of the insured's health when it was issued: Connell v. Metropolitan Life Ins. Co., 16 Pa. Superior Ct. 520.

In most cases, sound health is a question of fact for the jury: Clark v. Metropolitan Life Ins. Co., 62 Pa. Superior Ct. 192. This case, however, differs from the cases of Brelish, Adm., v. Prud. Ins. Co. of America, 109 Pa. Superior Ct. 1, 165 A. 516, and Dzsujko v. Eureka-Md. Assur. Corp., ibid, 9, 165 A.

518, in that the testimony in those cases was entirely oral and therefore necessarily for the jury.

The burden of proving that the insured was not in sound health when the policy was dated and delivered was upon the defendant. It undertook to meet that burden by identifying and placing in evidence the proofs of death above described. These documents were admissible in behalf of defendant and against plaintiff as admissions, but were open to explanation, correction and even contradiction by him: Borgon v. John Hancock M. L. Ins. Co., 99 Pa. Superior Ct. 377, 381-2.

The case just cited seems to be more favorable to plaintiff than any of those cited in the brief of his counsel, but there are also important distinctions between that case and the present. There, the basic evidence, upon which the court below erroneously held the defendant had established the insured was not in sound health, consisted of the affidavit of the attending physician, incorporated in the proofs of death, and a copy of the death certificate executed by him, which certificates were contradictory as to vital matters.

Moreover, the plaintiff's evidence in rebuttal, summarized at page 381 of the opinion, was greater in volume and much stronger than in the case at bar.

Here, we have not only the statement of the attending physician but also the admissions of plaintiff made over his own signature. Although entitled to do so, he did not attempt to explain, correct or contradict any of them; nor is there any evidence of any kind upon this record tending in that direction. Neither plaintiff, nor the witness called in rebuttal, denied the attendance of the family physician for months prior to the date of the policy; the substance of their statements was that the insured was doing her work around the house when the policy issued and seemed healthy to them.

Upon consideration of the entire record, we cannot say the court below erred in its final conclusion that plaintiff, having failed to explain or controvert the admissions referred to, was not entitled to go to the jury, and that the extent of defendant's liability was to return the premiums collected on the policy.

Judgment affirmed.