## Burke Adr., v. Prudential Insurance Company of America, Appellant.

Submitted March 4, 1942.

82

Before
KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and
KENWORTHEY, JJ.

*Richard B. Sheridan,* of *Sheridan & Sheridan,* and
*A. A. Vosburg,* of *Vosburg and Vosburg,* for appellant.

*Seymour Hurwitz* and *Maurice S. Cantor,* for appellee.

OPINION BY KENWORTHEY, J., July 23, 1942:

This is an action on four policies of insurance on the life of Mary Burke. The action is by her son, the administrator of her estate. Defendant appeals from the refusal of its motion for new trial.

The policies were issued July 1, 1935. The insured died of cancer March 13, 1936; the defense was she was not in sound health,[1] that she was suffering from cancer on the date the policies were issued. The burden of establishing this defense was on appellant and the evidence it offered was concededly for the jury. *Borgon v. John Hancock M. Life Ins. Co.,* 99 Pa. Superior Ct. 377, 382; *Palyo v. W. & S. Life Ins. Co.,* 114 Pa. Superior Ct. 583, 174 A. 640. The cancer was not dis-

---

[1] The policies provided: "This policy shall not take effect if the insured died before the date hereof, or if on such date the Insured be not in sound health, but in either event the premiums paid hereon, if any, shall be returned."

covered until November 18, 1935, more than four and a half months after the policies were issued. Appellant relied, in order to establish its defense, on the opinion of physicians, who treated the insured at that time, that the disease antedated the policies.

Appellee alleged that "Proofs of the death of said Mary Burke were forthwith furnished to the defendant." Appellant answered this as follows: "That papers purporting to be proofs of death were submitted to the defendant company, but that said proofs disclose that the insured died of a cancerous disease known as carcinoma of the uterus and that said condition had existed for a long period of time prior to death." The court permitted appellee to offer the allegation and refused to compel him to offer the entire answer. This was clearly correct. *Crew Levick Co. v. Philadelphia Investment B. & L. Ass'n,* 117 Pa. Superior Ct. 397, 402, 177 A. 498; *Real Estate-Land Title & Trust Co. v. Homer B. & L. Ass'n,* 138 Pa. Superior Ct. 563, 10 A. (2d) 786. The only purpose of the offer was to establish the fact that the proofs had been submitted. No one reading the affidavit of defense could have any doubt the allegation was not denied. The latter part of the paragraph attempts to set up a defense which bears no relation to the allegation. And the equivocation which was the basis of the attempt to compel appellee to offer in evidence the proofs of death indicated something considerably short of the highest good faith. The "papers purporting to be proofs of death" were in fact appellant's own forms and had been filled out by appellant's agent from information procured by him from appellee and the attending physician. And they were ultimately offered in evidence by appellant.

The proofs of death, under the heading, "Claimant's Certificate," contained the following: "19. What date did deceased first consult a physician *for last illness?* 3/27/35, Dr. Wascolonis. 3/16/36, Dr. Netzel." It is

argued that this, together with the statement in the certificate of death that the immediate cause of death was carcinoma of the uterus, indicated that the insured was suffering from and treated for cancer as early as March 27, 1935. But on cross-examination, appellant's agent testified, without objection, that, in filling out the proofs, he propounded the various questions contained in them to appellee and when he came to the question numbered 19, "I asked him the date that the doctor attended his mother, and he said he didn't know." The next morning he saw Dr. Wascolonis on the street and, "I asked him about the date that he attended Mrs. Burke." Thus, according to his own version, he made no reference to the last illness. The doctor didn't recall the date and the agent subsequently went to the doctor's office and took the date from the record. The doctor, on direct examination by appellant's counsel, testified that he had seen the deceased three times during March 1935 *for a rash* and, on cross-examination, without objection, he testified that he did not treat her in her last illness or for the cancer from which she died. Appellant now argues that the court committed reversible error when it permitted the appellee, in rebuttal, to testify he had not given the agent the information contained in the answer to question No. 19. If it were error, it was clearly harmless because, as we have pointed out, the same evidence had been previously introduced by appellant's agent without objection. It is equally clear statements in the proofs of death are but prima facie evidence of the facts set forth therein and may be rebutted. *Baldi v. Metropolitan Life Insurance Co.,* 24 Pa. Superior Ct. 275; *Sack v. Metropolitan Life Insurance Co.,* 115 Pa. Superior Ct. 430, 175 A. 733.

Appellant next contends that "The learned Court erred in allowing lay witnesses to testify that the insured's *actual,* and not *apparent* condition of health,

was good." When appellee was on the witness stand, the following took place: "Q. ...... What was the nature of your mother's apparent health at that time? [The date the policies were issued.] Defendant's Counsel: We object to the form of the question, and to the question in general. It isn't the nature of the apparent health; that doesn't mean—Q. Whether or not your mother's general health, as far as you know, was good? Defendant's Counsel: We object to that; improper. Q. Or bad? ...... A. Why, she was in good health as far as I know. She never complained to me." Appellant now apparently concedes the question was originally asked in the proper form. See *Baldi v. Metropolitan Insurance Co.*, 18 Pa. Superior Ct. 599. And, if the question was subsequently asked and answered in an improper form, the fault was appellant's. It would be a travesty on the rules of trial practice to permit a party to object to a proper question and to thereafter take advantage of the opposite party's misguided attempt to meet the objection and cure it. And finally, although the question was objected to, the record discloses no ruling on it and no exception. See *Com. v. Gilleland*, 93 Pa. Superior Ct. 307.

In rebuttal, appellee called a physician who was permitted to testify that in his opinion it is not possible for any physician to state the definite minimum period of the progress of cancer from origin to fatality. The physician was asked a number of questions of the same general import. The questions were not properly objected to. For that reason, we are not called upon to pass upon the argument that the evidence was inadmissible, although such evidence has been held admissible, see RICE, P. J., in *Baldi v. Metropolitan Insurance Co.*, 18 Pa. Superior Ct. 599, 608.

Most of the remaining questions raised are collateral to and therefore disposed of by what we have already said. They are all without merit. The case was submitted to the jury in a fair and adequate charge and

the motion for new trial was disposed of in a well considered and comprehensive opinion.

Judgment is affirmed.