## WASHINGTON NAT. INS. CO. v. STANTON et al.

No. 9.

Municipal Court of Appeals for the District of Columbia.

Nov. 23, 1942.

Arthur H. Clephane, of Washington, D. C. (Walter C. Clephane, J. Wilmer Latimer, and Gilbert L. Hall, all of Washington, D. C., on the brief), for appellant.

Daniel B. Maher, of Washington, D. C. (Dennis Collins, of Washington, D. C., on the brief), for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

This is an appeal from the Municipal Court for the District of Columbia, from a judgment entered on the verdict of a jury in favor of the plaintiffs who sued as beneficiaries of a policy of industrial life insurance.

The single assignment of error relied upon relates to the refusal of the trial judge to direct a verdict in favor of the defendant upon the whole evidence.

The policy was issued on October 3, 1938, and contained a provision that if the insured had within two years before its date been attended by a physician for any serious disease or complaint, it should be voidable and the liability of the com-

pany limited to the return of premiums paid.

The insured died on April 18, 1940, less than six months before the policy would, by its terms, have become incontestable.

The claim of the beneficiaries for the face amount of the policy was rejected by the company on the ground that the deceased had within two years before the date of the policy suffered from a serious disease or complaint, namely, arthritis. The company tendered the return of $49.20, being the total amount of premiums paid in. This was rejected and suit commenced on the policy. At the trial plaintiffs proved the policy and the death of the insured, and rested.

The substance of defendant's testimony was that the insured had for some time suffered from a severe case of arthritis which involved her left shoulder joint, finger joints, and knee joints, with some involvement of her right elbow; and that she had been hospitalized on three different occasions for treatment of the ailment.

A physician called by the defendant testified, in substance, that a patient with the symptoms and in the physical condition revealed by the history of the insured was in fact suffering from a serious disease; that it would prevent her from pursuing her normal everyday occupation and had, in fact, incapacitated this patient; that the various bone changes were permanent, although she might from time to time regain the use of the affected parts; that the ailment would tend to become progressively worse and she would finally become bedridden. His testimony was further that the patient would be bound to know she had a serious disease because of the excruciating pain she would suffer, the long periods of time spent in the hospital, and the incapacitating effect of the ailment.

A sister of the insured, called by defendant, testified that there were many times during the period between July, 1937, and April, 1938, when the deceased could not walk or use her arms, hands, or legs; that the insured told her that she had arthritis but that she did not consider her condition as serious; that later, during the period when the insured lived with her, she could do ordinary household tasks around the house; that they had discussed the situation many times and the insured never regarded her illness as serious; that insured had told her many times that the doctor had told her it was not serious, and that no one had ever died from it, and that it would leave her as quickly as it came upon her, and she felt that was going to happen.

Plaintiff in rebuttal called the physician who attended the insured during 1937 and part of 1938, and during all of the time she was in the hospital. He testified that in the early summer of 1937 she was almost totally incapacitated by arthritis; that he had treated her with some success; and that he placed her in the hospital not because she was actually in need of hospitalization but because he was treating her with sulfa drugs and wanted to keep her under observation. He testified that the ailment was serious only in the sense that it temporarily restricted the motion of certain parts of the body; that it was an illness that would, and did, leave the patient as quickly as it had come upon her; that her condition would not be permanent, and that any incapacity would be of a temporary nature; that the arthritis from which she was suffering was not dangerous to life and that it would not, and did not, shorten her life; and that the patient had made a "perfectly marvelous" recovery after she left the hospital in April, 1938, and was able to do ordinary household tasks.

By way of further rebuttal a daughter of the insured testified that during the time her mother was in the hospital in April, 1938, she heard the doctor tell her mother that the illness would be only of a temporary nature and that it would leave her as quickly as it had come upon her.

The insured died at Georgetown Hospital on April 18, 1940, after an operation for fibroma of the cervix. The cause of death was hemorrhage at operation and post-operative shock. It is conceded that the operation and resulting death were in no manner attributable to the prior arthritic condition of the insured.

Upon this showing the trial judge refused a peremptory instruction for the defendant, and refused to limit plaintiffs' recovery to a refund of premiums. He submitted the case to the jury upon instructions to which no exception was taken, and concerning which there is no complaint here.

The question presented is whether upon the whole evidence there was a case to go to the jury.

682

■ The policy involved comes within the purview of Title 35, Section 1002, 1940 edition, District of Columbia Code.[1] The effect of that section is to cast the burden of proof upon the insurer and to require that it establish that the ailment was serious and that the insured knew, or had reason to know, the facts on which the defense is based.

In our view there was a substantial conflict in the evidence upon both of these points. The two physicians who testified for the respective parties offered sharply contradictory views on the medical aspects of the case. Furthermore, the physician of the insured directly rebutted defendant's contention that insured had either real or imputed knowledge of the alleged seriousness of her condition. Further substantial contradiction on this point came from the two lay witnesses.

■■ It is established in this jurisdiction that in cases of this type, where there is no conflict in the evidence or no contradiction of a showing of the existence of a serious disease, the trial judge must take the case from the jury and rule as a matter of law in favor of the insurer. Pullen v. Sun Life Ins. Co. of America, 1941, 74 App.D.C. 197, 121 F.2d 110. It is, however, equally well established that where plaintiff creates a substantial issue of fact on the question of unsound health, it becomes a question for the jury and not for the court. Healy v. Metropolitan Life Ins. Co., 1911, 37 App.D.C. 240. See, also, Mays v. New Amsterdam Casualty Co., 1913, 40 App.D.C. 249, 46 L.R.A.,N.S., 1108, in which the Court said, "If there is room for doubt, the jury should determine the question." This rule was reaffirmed on a second appeal of the same case, in New Amsterdam Casualty Co. v. Mays, 1915, 43 App.D.C. 84.

It should be noted that the three last named cases were decided prior to the enactment of the Code section cited above, and that the legal position of these plaintiffs is by that fact so much the stronger, because by legislative fiat the burden of proof is now placed squarely upon the defendant.

■ Aside from the statute, we regard the case as one which should have been submitted to the jury. As was said by the Supreme Court in Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720: "Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them. [Citations] Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. [Citation]"

The most recent expression on this subject was in the case of Jacob v. City of New York, 315 U.S. 752, 62 S.Ct. 854, 856, 86 L.Ed. 1166, decided March 30, 1942, where the Supreme Court said: "Without doubt the case is close and a jury might find either way. But that is no reason for a court to usurp the function of the jury."

In appellant's brief a number of cases[2] are cited from other jurisdictions. They are not decisive of this issue because they either involve situations where there was

[1] "If payment of such a policy shall be refused because of unsound health at or prior to the date of the policy, the good faith of both applicant and insured shall constitute a material element in determining the validity of the policy; and it shall not be held invalid because of unsound health unless the insurer shall prove that, at or before the date of issue of the policy, the insured or applicant had knowledge of, or reason to know, the facts on which the defense is based, or shall prove that the insurance was procured by the insured or applicant in bad faith or with intent to defraud the company, any provision, agreement, condition, warranty, or clause contained in said policy * * * to the contrary notwithstanding. * * *" (Enacted June 4, 1934.)

[2] Roush v. Metropolitan Life Insurance Co., 1935, 116 Pa.Super. 162, 176 A. 809; Greenbaum v. Columbian Nat. Life Insurance Co., 2 Cir., 62 F.2d 56; Palyo v. Western & Southern Life Insurance Co., 1934, 114 Pa.Super. 583, 174 A. 640; Butkevicus v. John Hancock Mutual Life Insurance Co., 1930, 228 App.Div. 501, 240 N.Y.S. 358; Rossetti v. Metropolitan Life Insurance Co., Co.Ct.1939, 10 N.Y.S.2d 437; Kennedy v. Prudential Insurance Co., 177 Ill.App. 50; Winn v. Provident Life & Trust Co., 99 App.Div.

no conflict in the evidence or no contradiction by medical witnesses of a showing of unsound health; or they are from jurisdictions where the burden of proof is upon the plaintiff to affirmatively establish sound health.

In our view of the case the action of the trial judge in submitting the disputed issues to the jury was correct. The judgment should be affirmed.

■ We think it advisable to direct attention to a procedural aspect of this case. Appellant submitted a Statement of Proceedings and Evidence to the trial judge. Appellees filed objections thereto. Both the statement and the objections were approved by the trial judge and separately incorporated into the record. This makes for confusion and requires us to grope through two disconnected parts of the record to piece the evidence together and reconstruct the factual picture. It is not a compliance with our Rules. The proper procedure would be to have the Statement of Proceedings and Evidence reflect in one document a complete and continuous narrative statement of what happened at the trial.

Affirmed.

103, 91 N.Y.S. 167; Life & Casualty Insurance Co. v. Runnion, 1935, 20 Tenn. App. 13, 94 S.W.2d 405; Equitable Life Assurance Society v. Keiper, 3 Cir., 165 F. 595; New York Life Insurance Co. v. Brandwene, 1934, 316 Pa. 218, 172 A. 669.